IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 8:05CR165 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | |
| RICKY DAVIS, | ) | |
| | ) | |
| Defendant. | ) | |

Defendant is before the court for sentencing, pursuant to the now-advisory United States Sentencing Guidelines ("Guidelines"), after a trial and conviction on one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). This memorandum opinion supplements findings made on the record at sentencing on October 7, 2005 (Filing No. 36), the Judgment (Filing No. 40), and the Statement of Reasons (Filing No. 42) in this case.

**I.   FACTS**

Defendant was tried to a jury on June 27, 2005, to June 29, 2005. The jury returned a verdict of guilty to one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). Filing No. 18. The jury was instructed that the crime of being a felon in possession of a firearm had three essential elements: the defendant had been convicted of a felony, that is a crime punishable by imprisonment for a term exceeding one year; the defendant thereafter knowingly possessed or received the following firearm: a Smith & Wesson, Model 39-2, 9mm semi-automatic pistol; and the firearm was transported across a state line at some time during or before the defendant possessed it. Filing No. 28, Instruction No. 11a.

A presentence investigation report ("PSR") was prepared by the United States Probation Office for the District of Nebraska ("Probation") and was distributed to the parties. Filing No. 22. In the PSR, Probation assigned a base offense level of 20 under U.S.S.G. § 2K2.1. Based on the prosecutor's version of events and a review of the United States Attorney's office file and Omaha Police Department reports, Probation recommended a two-level increase in the offense level under U.S.S.G. § 2K2.1(b)(4) because the weapon was stolen. Probation further recommended a four-level upward adjustment pursuant to U.S.S.G. § 2K2.1(b)(5) because it found defendant used the weapon in connection with another felony offense based on information from a reliable confidential informant that Mr. Davis had been selling marijuana from his home. It also determined that Davis was not entitled to a reduction for acceptance of responsibility because he had gone to trial. Accordingly, Probation determined defendant's base offense level to be 26. Probation determined defendant's criminal history category was category V, based on the assessment of eleven criminal history points, including two for commission of the instant offense within two years of his release from jail for driving during suspension. Defendant's other criminal history points were assessed for convictions for driving under suspension, drug distribution, possession of marijuana and theft by receiving stolen goods. Based on a criminal history category of V at offense level 26, Probation determined defendant's Guidelines sentencing range to be 110 to 137 months. However, because the statutory maximum for the offense is ten years, Probation limited the upper end of the range to 120 months.

Defendant objected to the PSR and also moved for downward departure for overrepresentation of his criminal history. Filing Nos. 29, 30. He objected to increases in his sentence for possessing a stolen gun and for using the gun in connection with another

felony. He raised these objections under the Fifth and Sixth Amendments to the Constitution, contending that the facts supporting the adjustments had not been proved to a jury or to the court beyond a reasonable doubt.

At the sentencing hearing, the government accepted and adopted the PSR. It relied on evidence adduced at trial to show that the gun was stolen and that the weapon was used in connection with drug dealing. Defendant countered that the evidence also showed that the weapon was broken or inoperable.

## II.   DISCUSSION

### A.   Sentencing Procedure

In *United States v. Booker*, — U.S. —, 125 S. Ct. 738 (2005), the Supreme Court found the United States Sentencing Guidelines ("Guidelines") unconstitutional when applied as mandatory. *Id.* at 764 (Breyer, J., opinion of the Court) ("remedial opinion"). Accordingly, the Guidelines are now advisory and sentences are subject to appellate review for "reasonableness." *Id.* at 757, 765-66. Under Eighth Circuit precedent, this court follows certain prescribed sentencing procedures in imposing a sentence post-*Booker*. *See United States v. Mashek*, 406 F.3d 1012, 1016 n.4 (8th Cir. 2005); *United States v. Haack*, 403 F.3d 997, 1002 (8th Cir. 2005). The court continues to determine the appropriate Guidelines sentencing range, since that range is an important factor to be considered in the imposition of a sentence. *Haack,* 403 F.3d at 1002. Once the applicable range is determined, the court then decides if a traditional departure is appropriate under Part K and/or § 4A1.3 of the Guidelines. *Id.* However, "[b]ecause the guidelines are now advisory, a reasonable departure is not limited solely to circumstances that the formerly mandatory guidelines framework would have deemed permissible bases for departure." *United States*

*v. Hadash*, 408 F.3d 1080, 1083 (8th Cir. 2005) (stating that *Booker* excised the narrow prescription for when departures are warranted). A sentence that includes a formerly permissible basis for departure is nonetheless "consistent with the now-advisory Guidelines and this is generally indicative of reasonableness." *United States v. Shannon*, 414 F.3d 921, 924 (8th Cir. 2005). Application of those considerations results in a "Guidelines sentence." *Haack,* 403 F.3d at 1002.

The court then considers the factors set forth in 18 U.S.C. § 3553(a) to determine whether to impose the Guidelines sentence or a non-Guidelines sentence. *Id.* The court considers the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. 18 U.S.C. § 3553(a)(2). In addition, the court must consider the kinds of sentence available and the applicable category of offenses and category of defendant as set forth in the Guidelines and its policy statements,[1] as well as the need to avoid unwarranted sentencing disparities among defendants who have been found guilty of similar conduct. 18 U.S.C. § 3553(a)(3)-(6).

---

[1]The Guidelines range is thus one of many factors for the sentencing court to consider, and although the court is not bound by the Guidelines, it must consult them and take them into account when sentencing. *Booker,* — U.S. at —, 125 S. Ct. at 767. *See also United States v. Winters*, 416 F.3d 856 (8th Cir. 2005) (noting that "[t]he Guidelines range is merely one factor," and that review for reasonableness "must be based on *all* the factors listed in § 3553(a)(6)," possible sentencing disparity must not be isolated "to the exclusion of all the other § 3553(a) factors") (emphasis in original). Indeed, any finding that "the range of reasonableness is essentially co-extensive with the Guidelines would effectively render the Guidelines mandatory." *See id.* at 861.

### 1. Determination of Guidelines Sentence

Nothing in *Booker* requires the court to determine the appropriate Guidelines sentencing range in any manner other than the way the sentence would have been determined pre-*Booker*. *Hack,* 403 F.3d at 1002. The first step in determining the Guidelines sentence is determining which offense guideline section covers the offense of conviction. *See* U.S.S.G. § 1B1.2(a); *United States v. Casey*, 158 F.3d 993, 995 (8th Cir. 1998); *United States v. Street*, 66 F.3d 969, 979 (8th Cir.1995). "The offense guideline section is the foundation of the sentence." *See Casey*, 158 F.3d at 995; *United States v. Saavedra*, 148 F.3d 1311, 1314 (11th Cir. 1998). In order to correctly determine the applicable offense guideline, a sentencing court identifies "the offense guideline section in Chapter Two (Offense Conduct) most applicable to the offense of conviction." U.S.S.G. § 1B1.2(a); *Casey*, 153 F.3d at 996. *See also United States v. Martinez-Noriega,* 418 F.3d 809, 812 (8th Cir. 2005). The offense guideline section applicable to firearms offenses is U.S.S.G. § 2K2.1. A defendant sentenced under § 2K2.1 faces a base offense level that ranges from level 6 to level 26, depending on the type of weapon involved and the defendant's prior history. U.S.S.G. § 2K2.1(a). The base offense level can also be increased by specific offense characteristics. *See, e.g.*, U.S.S.G. §§ 2K2.1(b)(5) ("[i]f the defendant used or possessed any firearm or ammunition in connection with another felony offense . . . increase by 4 levels"); 2K2.1(b)(4) ("if any firearm was stolen or had an altered or obliterated serial number, increase by two levels").

Defendant objects to increases in his offense level for possessing a stolen gun and for using a gun in connection with another felony. This court is charged with making a determination with respect to any fact in the PSR that is disputed by defendant. Fed. R. Cr.

P. 32(I)(3)(B).  Of course, the PSR is not evidence and is not legally sufficient for making findings of fact on contested issues. *United States v. Meaner*, 377 F. 849, 853 (8th Cir. 2004) (noting that when "a timely objection to the PSR is made, the sentencing court may not rely solely on the PSR when making a finding as to the disputed facts but must do so on the basis of evidence"); *United States v. DeWitt*, 366 F.3d 667, 671 (8th Cir. 2004). Defendant's objections relate to the quantum of proof necessary for the court's determination that these facts can be relied on to increase his sentence.

The Sixth Amendment is violated if a sentencing judge imposes a sentence under the Guidelines based on the determination of a fact (other than a prior conviction) that was not found by the jury or admitted by the defendant.  *United States v. Booker,* 125 S. Ct. 738, 746 (2005) (Stevens, J., opinion of the Court) ("substantive majority opinion") (finding that *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531 (2004), and *Apprendi v. New Jersey,* 530 U.S. 466, 477 (2000), apply to the United States Sentencing Guidelines); *United States v. Marcussen*, 403 F.3d 982, 983 (8th Cir. 2005) (recognizing that *Booker* held "the guidelines scheme ran afoul of the Sixth Amendment insofar as the scheme provided that based on certain facts found by the sentencing judge, the judge was required to impose a more severe sentence than could have been imposed based on the facts found by the jury or admitted by the defendant").  Defendant has been afforded a jury trial on the offense of conviction.  Under *Booker's* remedial scheme, rendering the Guidelines advisory resolves Sixth Amendment concerns.  *See Booker*, 125 S. Ct. at 749; *United States v. Red Elk*, 2005 WL 2585708 (8th Cir. Oct. 14, 2005).

6

Defendant's objections, however, are premised on the Fifth Amendment as well as the Sixth Amendment.² The issue is thus whether, and under what standard of proof, the court can determine facts at sentencing so as not to offend a defendant's Fifth Amendment right to due process.

To the extent that making the Guidelines advisory obviates constitutional concerns, there are distinctions to be drawn between Fifth Amendment and Sixth Amendment protections. *See United States v. Pimental*, 367 F. Supp. 2d 143, 152 (D. Mass. 2005) (stating that "even if the Sixth Amendment's jury trial guarantee is not directly implicated because the regime is no longer a mandatory one, the Fifth Amendment's Due Process requirement is"). *See also Booker*, 125 S. Ct. at 799 (Thomas, J., concurring in substantive majority opinion, dissenting to remedial majority opinion) (stating that the substantive majority opinion "corrects the [Sentencing Commission's] mistaken belief," set forth in U.S.S.G. § 6A1.3, that "use of a preponderance of the evidence standard is appropriate to meet due process concerns and policy concerns in resolving disputes regarding application of the guidelines to the facts of a case").³

---

²The *Booker* decision has been interpreted to establish that "but for the mandatory nature of the Guidelines, fact-findings by the district court will not offend the Sixth Amendment." *United States v. Ryder*, No. 03-3478/79, 2005 WL 1639460 (8th Cir. July 14, 2005). Whether such facts pass muster under the Fifth Amendment is a different question. In *Booker,* the Supreme Court carefully limited its holding to the Sixth Amendment right to jury trial and did not address the requirement of proof beyond a reasonable doubt which has its roots in the Fifth Amendment's Due Process Clause. *See Booker,* 125 S. Ct. at 798 n.6 (Thomas, J., dissenting in part) ("[t]he Fifth Amendment requires proof beyond a reasonable doubt, not by a preponderance of the evidence, of any fact that increases the sentence beyond what could have been lawfully imposed on the basis of facts found by a jury or admitted by defendant."). *Booker* does not address the due process constraints on sentencing.

³Cases holding that the district court is entitled, under an advisory system, to determine sentences based upon judge-found facts and uncharged conduct in the exact manner it did under the mandatory Guidelines regime are inapposite since they do not involve Fifth Amendment due process challenges. *See, e.g., United States v. Vaughn,* 410 F.3d 1002, 1004 (8th Cir. 2005); *United States v. Hallam,* 407 F.3d 942, 949 (8th Cir. 2005).

A Fifth Amendment challenge involves a constitutional protection "of surpassing importance: the proscription of any deprivation of liberty without 'due process of law.'" *Apprendi v. New Jersey,* 530 U.S. 466, 477 (2000). It provides that a criminal defendant is entitled to a determination that he is guilty of every element of the crime with which he is charged beyond a reasonable doubt. *Id.* at 477. The entitlement to proof beyond a reasonable doubt is as "equally well-founded" as the right to a jury determination. *Id.* at 478 (noting that "[t]he 'demand for a higher degree of persuasion in criminal cases was recurrently expressed from ancient times . . . [and] is now accepted in common law jurisdictions as the measure of persuasion by which the prosecution must convince the trier of all the essential elements of guilt'" (quoting *In re Winship*, 397 U.S. 358, 361, (1970)). The reliance on the "reasonable doubt" standard reflects a profound judgment about the way in which laws should be enforced and justice administered. *Id.* It has a vital role in our criminal procedure for cogent reasons—prosecution subjects a criminal defendant both to possible loss of liberty and to certain stigma. See *id.* at 484. The procedural protection of a reasonable doubt standard is thus required "in order to 'provide concrete substance for the presumption of innocence,' and to reduce the risk of imposing such deprivations erroneously." *Id.* Indeed, use of the beyond-a-reasonable-doubt standard reflects society's belief that the defendant's interests are so great that the state should bear the risk of error. *See Bullington v. Missouri*, 451 U.S. 430, 440-41 (1981).

The Due Process Clause is implicated whenever a judge determines a fact by a standard lower than "beyond a reasonable doubt" if that factual finding would increase the

8

punishment above the lawful sentence that could have been imposed absent that fact.[4] *Apprendi*, 530 U.S. at 494. *Apprendi* was by appeals courts interpreted to mean that facts that "increase[d] the penalty for a crime beyond the prescribed *statutory maximum*" must be proved beyond a reasonable doubt. *See, e.g., United States v. Hernandez*, 299 F.3d 984, 993 (8th Cir. 2002). In *Blakely*, the Court clarified that the "statutory maximum" was "the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*." *Blakely*, 124 S. Ct. at 2537 (noting that "[t]he relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings") (emphasis in original). *Blakely* thus broadened *Apprendi* by requiring that "all facts 'which the law makes essential to the punishment'" be subject to constitutional protections. *Blakely*, 124 S. Ct. at 2537 (quoting 1 J. Bishop, Criminal Procedure § 87 (2d ed. 1872)); *see United States v. Malouf*, 2005 WL 1398624 (D. Mass. 2005). Any contention that by making the Guidelines merely advisory, the maximum sentence faced by a defendant again becomes the statutory maximum set forth in the United States Code contravenes *Blakely*. *Blakely,* 124 S. Ct. at 2537; *Ring v. Arizona*, 536 U.S. 584, 602 (2002). Indeed, in *Booker*, use of the modifier "statutory" with reference to "maximum" was abandoned altogether. *See Booker,* 125 S. Ct. at 752 (substantive majority opinion) (explaining that use of the term "statutory maximum" in *Apprendi* was necessitated by the fact that a statute was under consideration in the case).

---

[4]*Cf. United States v. Pirani*, 406 F.3d 543, 551 n.4 (8th Cir. 2005) (*en banc*) (noting that *Booker* does not require that sentencing judges find sentence-enhancing facts beyond a reasonable doubt). As noted, *Booker's* remedial opinion simply does not involve the Fifth Amendment issue. Moreover, the defendant in *Pirani* had not preserved the issue by raising an *Apprendi* objection. *Id.* at 549.

It remains true after *Booker* that under *Apprendi* the point at which constitutional safeguards attach to a sentence imposed within a broad discretionary range is the point at which the sentence exceeds "the limits fixed by law." *Apprendi*, 530 U.S. at 566 n.9 (stating that a judge may "not impose a more severe sentence than that authorized by the facts found [beyond a reasonable doubt] by a jury").  Under the advisory Guidelines scheme, "a reasonable sentence," as determined by the interplay of the criminal code, the Sentencing Reform Act, the now-advisory Sentencing Guidelines, and evolving circuit court sentencing directives, has become the "the limit fixed by law."  In contrast to the pre-Guidelines sentencing regime, a sentencing court's discretion is limited post-*Booker*. *Compare United States v. Brenneman*, 918 F.2d 745, 746 (8th Cir. 1990) (holding that a sentence imposed within the applicable statutory limits was generally not subject to review on appeal, and would be reviewed only for manifest or gross abuse of discretion such that the severity of the sentence "shocks the judicial conscience"), *with Booker,* 125 S. Ct. at 750 (substantive majority opinion) (noting that no *Apprendi* problem arises when a district judge is bound only by the statutory maximum with no prospect of reversal for imposition of a sentence within that range), and *Booker,* 125 S. Ct. at 765-66 (remedial majority opinion) (prescribing appellate review for reasonableness).  Thus, it remains true after *Blakely* and *Booker* that "a judge's role in sentencing is constrained at its outer limits by *the facts alleged in the indictment"* and found either by the jury, or by a judge if defendant consents to judicial fact-finding.  *See Apprendi*, 430 U.S. at 483 n.10.  Consent to judicial fact-finding, however,

does not equate to consent to have facts determined under a lower standard of proof.[5] *See Schriro v. Summerlin*, 124 S. Ct. 2519, 2523 (2004) (stating that judicial determinations *made beyond a reasonable doubt* are sufficiently reliable that they do not render a trial fundamentally unfair); *see also Boykin*, 395 U.S. at 243 (stating that pleading guilty implicates the Fifth Amendment privilege against self-incrimination, the Sixth Amendment right to confront one's accusers, and the Sixth Amendment right to trial by jury with no mention of the burden of proof); *Patterson v. New York*, 432 U.S. at 215 ("[A] State must prove every ingredient of an offense beyond a reasonable doubt and . . . may not shift the burden of proof to the defendant by presuming that ingredient upon proof of the other elements of the offense"); *Sandstrom v. Montana,* 442 U.S. 510, 520-524 (1979).

Certain facts, such as drug quantity, scope of the operation, amount of loss, or injury are as important to the sentence as the general elements of a crime set out in the criminal code. *See, e.g., United States v. Malouf*, 2005 WL 1398624 at *11. Moreover, these

---

[5]The burden of proof is not the defendant's to waive. *See In re Winship*, 397 U.S. 358, 364 (1970) (noting the importance "in a free society that every individual going about his ordinary affairs have confidence that the Government cannot adjudge him guilty of a criminal offense without convincing a proper factfinder of his guilt with utmost certainty"); *see also Neder v. United States,* 527 U.S. 1, 11, 13-15 (1999) (holding that failure to instruct the jury that the State must prove the elements of an offense beyond a reasonable doubt vitiates all the jury's findings; whereas, a failure to instruct on one element of an offense would not); *Victor v. Nebraska*, 511 U.S. 1 (1994) ("The Due Process Clause requires the government to prove a criminal defendant's guilt beyond a reasonable doubt, and trial courts must avoid defining reasonable doubt so as to lead the jury to convict on a lesser showing than due process requires."); *Sullivan v. Louisiana*, 508 U.S. 275, 278, 282-83 (1993) (discussing the relationship between the Fifth and Sixth Amendment and stating that "the jury verdict required by the Sixth Amendment is a jury verdict of guilty beyond a reasonable doubt" and finding an erroneous burden-of-proof instruction is structural error not subject to harmless error review); *Estelle v. McGuire*, 502 U.S. 62, 72 n.4 (1991) ("[T]he prosecution's burden to prove every element of the crime is not relieved by a defendant's tactical decision not to contest an essential element of the offense"); *Jackson v. Virginia*, 443 U.S. 307 (1979) (finding the *Winship* doctrine, "establishing so fundamental a substantive constitutional standard, must also require that the factfinder will rationally apply that standard to the facts in evidence")*; Patterson v. New York*, 432 U.S. at 215 (1977) (recognizing a limit on state authority to reallocate traditional burdens of proof). Notably, the United States Supreme Court has recently granted certiorari to resolve the issue of whether *Blakely* errors can be subject to harmless-error analysis under *Neder*, 527 U.S. at 13-15 or instead qualify as structural errors under *Sullivan,* 508 U.S. at 280-81. *See Washington v. Recuenco*, 110 P.3d 188 (Wash. 2005), *cert. granted*, 74 U.S.L.W. 3246 (U.S. Oct. 17, 2005) (No. 05-83).

factors typically relate to the offense rather than to characteristics of the offender.  *See id.* Even under the advisory Guidelines, some facts will be determinative in that they drive the calculation of the base offense level.  *See id.* (noting that in drug prosecutions, "quantity is all, despite the fact that it may well depend on variables that have nothing to do with the real scope of the offense, or defendant's role in it (e.g., how long the government happened to have surveilled the defendant, how explicit a co-defendant was about amounts, etc.)"). These facts "figure so prominently in the sentencing decision that the decisionmaker should have a high degree of confidence in the fact."  *Id.*; *United States v. Gray*, 362 F. Supp.2d 714, 723 (S.D. W. Va. 2005) ("As a tool for reducing the risk of error, reasonable doubt retains its usefulness in the advisory regime.").

The stolen-gun and use-of-a-weapon-in-connection-with-the-commission-of-a-felony enhancements are similarly important to the determination of the sentence in defendant Davis's case.  Application of those enhancements would serve to double the low end of the defendant's Guideline sentencing range.  Though furnished the opportunity to prove these enhancements to the jury, the government chose not to do so.  The government has been on notice of this court's position with respect to enhancements since the advent of *Blakely* and *Booker*.  See, e.g., *United States v. Okai*, No. 05CR19, 2005 WL 2042301 (D. Neb. Aug. 22, 2005); *United States v. Huerta-Rodriguez*, 355 F. Supp. 2d 1019 (D. Neb. 2005); *United States v. Terrell*, No. 8:04Cr24, 2004 WL 1661018 (D. Neb. July 22, 2004).  The government points to no evidence at trial that proves the enhancing facts, nor has it provided any proof at sentencing.  Under the circumstances, the court sustains defendant's objections to the PSR, finding that the government has neither pleaded nor proved that the gun was stolen or that the weapon was used in the commission of another felony.  The

court cannot afford much, if any, weight to the statements in the PSR which are based on hearsay statements of a confidential informant.

Under the circumstances, the court finds that it should err on the side of caution in protecting a criminal defendant's constitutional rights. The principal of constitutional avoidance mandates that the federal sentencing statutes should be construed to avoid the difficult constitutional question of whether the imposition of a harsher sentence—whether characterized as a Guidelines sentence, a departure, or a deviance—violates due process when the greater punishment is based on facts found under a standard lower than proof beyond a reasonable doubt. *See Clark v. Suarez-Martinez*, 125 S. Ct. 716, 724 (2005) (a court should construe a statute to avoid a constitutional infirmity if possible). Moreover, whatever the constitutional limitations on the advisory sentencing scheme, the court finds that it is not "reasonable" to base any significant increase in a defendant's sentence on facts that have not been proved beyond a reasonable doubt. S*ee Ring v. Arizona,* 536 U.S. 584, 592-93 and n.1 (2002) (holding that any fact essential to imposition of the death penalty must be submitted to a jury and found beyond a reasonable doubt); *Apprendi,* 530 U.S. at 477 (2000) (finding a sentence violates the right to "a jury determination that [the defendant] is guilty of every element of the crime with which he is charged, beyond a reasonable doubt"); *Jones v. United States*, 526 U.S. at 243 n.6 (1999) (holding that the carjacking statute, if construed as defining a single crime with three maximum penalties instead of three distinct offenses, would violate the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment).

Accordingly, the court determines that defendant Davis's base offense level under the Guidelines is 20 and his criminal history category is V, resulting in a Guideline

sentencing range of 63 to 78 months. The court denies defendant's motion for a downward departure for overrepresentation of criminal history category. Although the defendant has accumulated a number of criminal history points for relatively minor offenses, the court notes that defendant's criminal history includes significant jail time and a felony conviction. The court does not believe that category V overstates defendant's criminal history.

### 2. Reasonableness

The court next determines whether the sentence is reasonable under *Booker's* remedial scheme, mindful that "[i]n fulfilling its duty to impose a sentence sufficient, but not greater than necessary, to comply with sentencing purposes," the court must consider "the nature and circumstances of the offense and the history and characteristics of the defendant." *See* 18 U.S.C. § 3553(a)(1); *see also Booker*, 125 S. Ct. at 766-67 (remedial majority opinion). The court has considered the need for the sentence imposed: (1) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (2) to afford adequate deterrence to criminal conduct; (3) to protect the public from further crimes of the defendant; and (4) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. *See* 18 U.S.C. § 3553(a)(2). In addition, the court has considered the kinds of sentence available and the applicable categories of offenses and defendants as set forth in the advisory Guidelines and policy statements. 18 U.S.C. § 3553(a)(2). Also, the court has considered the need to avoid unwarranted sentencing disparities among defendants who have been found guilty of similar conduct. *See* 18 U.S.C. § 3553(a)(6) & (7). The court finds that a sentence of 63 months (or five and one-quarter years) is a sentence that will be sufficient to fulfill the sentencing objectives of just

punishment and deterrence.  Based upon its knowledge of sentences imposed in other cases of this nature, a sentence of five years is generally within the norm for this offense.

DATED this 9th day of November, 2005.

                           BY THE COURT:

                           s/Joseph F. Bataillon
                           JOSEPH F. BATAILLON
                           United States District Judge